UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION


ANTHONY MARCH                           CIVIL ACTION NO. 07-cv-1716

VERSUS                                  REFERRED TO:

U.S. COMMISSIONER SOCIAL                MAGISTRATE JUDGE HORNSBY
SECURITY ADMINISTRATION


**MEMORANDUM RULING**

**Introduction**

Anthony March ("Plaintiff") applied for benefits based primarily on alleged pain and

limitations that continued after a left hip replacement.  Plaintiff was born in 1964, he has a

limited education, and his past work experience included cement finisher and landscaping

laborer.  ALJ Charles Lindsay conducted a hearing and denied Plaintiff's claim.

The Appeals Council denied a request for review.  Plaintiff filed this civil action

seeking judicial review pursuant to 42 U.S.C. § 405(g).  Both parties filed written consent

to have a magistrate judge decide the case and, pursuant to 28 U.S.C. § 636(c) and the

standing order of the district court governing social security cases, the action was referred

to the undersigned for decision and entry of judgment.  For the reasons that follow, the

Commissioner's decision to deny benefits will be affirmed.

**Standard of Review; Substantial Evidence**

This court's standard of review is (1) whether substantial evidence of record supports

the ALJ's determination, and (2) whether the decision comports with relevant legal

standards.  <u>Villa v. Sullivan</u>, 895 F.2d 1019, 1021 (5th Cir. 1990).  "Substantial evidence is more than a scintilla and less than a preponderance.  It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Muse v. Sullivan</u>, 925 F.2d 785, 789 (5th Cir. 1991).  A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination.  <u>Johnson v. Bowen</u>, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Summary of the ALJ's Decision**

The ALJ analyzed the case under the familiar five-step sequential analysis.  He found that Plaintiff had not engaged in substantial gainful activity (step one) since June 15, 2000 and that he suffered from severe impairments (step two) in the form of "status post-left hip replacement, mild degenerative disk disease of the lumbar spine, hypertension, asthma, and diabetes mellitus."  The ALJ reviewed some listings at step three but found that Plaintiff did not meet them.  The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") to perform the demands of sedentary work, reduced by the ability to perform no more than occasional climbing stairs/ramps, balancing, crouching, crawling, stooping, squatting, or kneeling; an inability to climb ladders, ropes, or scaffolds; and the need to alternate between sitting and standing at his option, at approximately 30 minute intervals.

That seriously limited RFC did not permit Plaintiff to perform his past relevant work (step four) as cement finisher or landscaping laborer.  At step five, whether Plaintiff is capable of performing other jobs that are available in significant numbers, the ALJ heard

testimony from vocational expert ("VE") Joni Crayton. She testified that examples of jobs that a person such as Plaintiff could perform include final assembler and finisher. The ALJ accepted that testimony and held at step five that Plaintiff was not disabled.

**Analysis**

Plaintiff lists three errors on appeal, the first of which is a general challenge that there is not substantial evidence to support the decision that there are jobs that Plaintiff could perform. The substance of the argument is that the ALJ should not have rejected what Plaintiff claims is a clinical finding that Plaintiff needs a walker, and that the ALJ should have accepted Plaintiff's testimony that he has to lie down once a day (which the VE testified would preclude work).

Plaintiff's significant troubles began when he fell from a garbage truck in 2000 and developed a hip problem. He had a total left hip replacement in September 2001, and he was previously awarded a closed period of disability from 2000 through 2002 due to the hip replacement. The ALJ reviewed in great detail the medical evidence regarding Plaintiff's condition in the years after the surgery.

Among the evidence was a consultative exam by Dr. Charles Werner, who saw Plaintiff in 2005. Plaintiff was using a cane, and he showed some difficulty getting out of his chair, but he was able to get on to the exam table without any problems. Plaintiff complained of a great deal of pain in his left hip that prevented much motion associated with that joint. Plaintiff's gait in the room was "quite stiff" and Plaintiff was putting a lot of

support on his cane. However, Dr. Werner wrote that Plaintiff's gait became quite good with a minimal limp and barely any pressure on the cane after he left the room to go down the hall for some additional testing. An X-ray of the hip showed the prosthesis to be in place with no acute abnormalities. Plaintiff had told Dr. Werner that he had never done any type of recreational or illegal drug, but records show that Plaintiff tested positive for cocaine and was removed from a chronic pain management program because of belief by physicians that he was abusing the pain medicine. Dr. Werner wrote that he "would not be surprised if he was malingering based on the inconsistencies in the exam here in the office and his fabrications about never using any recreation or street-type drugs." Dr. Werner added: "I really do have a feeling that he is malingering with this chronic pain ... ." Tr. 125-27.

The record also includes medical records from visits to Dr. Rama Letchuman, of Pain Care Consultants. Plaintiff told Dr. Letchuman that methadone had been the most effective at controlling his pain, and he said it was last prescribed in January 2006, but the ALJ observed that records show it was last prescribed in 2004. Plaintiff complained in an April 2006 visit that he was in a lot of pain and believed he needed a powered wheelchair, and he asked the physician to certify a need. Dr. Letchuman instead ordered a wheeled walker for Plaintiff, which he said Plaintiff could use if a cane was not enough to unload his left hip. He wrote that a wheelchair was "definitely not indicated for this gentleman." He also recommended more exercise. Plaintiff continued to complain of pain at later visits, and

Dr. Letchuman noted that Plaintiff had a gait instability but did well with a cane/walker. Tr. 144-56.

Dr. Clinton McAlister conducted an orthopedic consultation in October 2006. He examined the prior report by Dr. Werner and the other medical records, and he examined Plaintiff. Plaintiff walked a short distance without his cane and had a slight limp on the left. He used a walker when he walked down the hall. An X-ray of the hip was normal, and the lumbar spine showed only a slight narrowing at L5-S1. Plaintiff nonetheless claimed a great deal of pain, which Dr. McAlister said he could not explain, though he did not see any evidence of exaggeration of symptoms during the exam. Dr. McAlister wrote that Plaintiff was "physically capable of performing at a sedentary level" but would have difficulty staying in any one position for a prolonged time. He should not lift over 20 pounds occasionally or 10 pounds frequently. Tr. 157-62.

The ALJ received similar evidence from the records of Dr. Steven Atchinson, an orthopedic physician, and he solicited a medical expert opinion from Dr. Phillip McCown. A state agency examiner reviewed the records and offered his opinion as to Plaintiff's RFC. None of those sources suggested limitations more severe than those in the RFC found by the ALJ. This record provided credible evidentiary choices that supported the ALJ's assessment of Plaintiff's RFC.

Plaintiff argues that the ALJ did not make an explicit determination that his use of a walker was not medically necessary. The ALJ did write, however, that the record showed

that Plaintiff "did not actually use the wheeled walker, and that he was ambulating adequately with a cane." Tr. 23. That determination, though perhaps arguable, is supported by substantial evidence in the form of the medical reports discussed above.

Plaintiff also complains that the ALJ wrongfully dismissed his testimony that he must lie down once a day. Plaintiff did testify that he is very limited, can lift perhaps only about five or ten pounds, walk only about half a block, and can sit for only 10 or 15 minutes at a time. Tr. 182-4. He also said he had to lie down on a good day for maybe an hour, but on a bad day maybe three to four hours. He complained that he could not get through a single day without having to lie down, and he estimated that good and bad days are split about 50/50. Tr. 186-87.

The VE testified that a person who had to lie down as Plaintiff claimed would not be able to work, and Plaintiff urges that the ALJ was required to accept that testimony as uncontradicted and consistent with the record. There was, however, medical evidence discussed above, such as the reports from Dr. Werner and Dr. McCown, that suggested that Plaintiff was not nearly so limited as claimed in his testimony. There was also ample reason to doubt Plaintiff's credibility, especially given the suggestion of malingering in one exam, the suspicion of medication abuse, and a positive test for a street drug.

An ALJ's findings on credibility of the claimant and the debilitating effect of subjective symptoms, based on his first-hand observation of the claimant, are particularly within his province and entitled to judicial deference. Johnson v. Bowen, 864 F.2d 340, 347

(5th Cir. 1988); <u>Falco v. Shalala</u>, 27 F.3d 160, 164 (5th Cir. 1994). <u>See also</u> <u>Spruill v. Astrue</u>, 2008 WL 4870980 (5th Cir. 2008) ("We accord great deference to the ALJ's credibility determination."). The ALJ's credibility assessment in this case is well supported by the record, and the ALJ explained his assessment in a reasonable fashion. There is no basis for the court to upset that determination.

The same is true with respect to Plaintiff's testimony about the need to alternate sitting and standing. Plaintiff claimed that he could sit only 10 or 15 minutes, while the ALJ found that Plaintiff could perform most of the limited demands of sedentary work, reduced in part by the need to alternate between sitting and standing, at his option, at approximately 30-minute intervals. Plaintiff argues that he would also need to walk around, which would constitute frequent breaks, which the VE testified would preclude work. The ALJ obviously rejected that testimony, and there is substantial evidence in the record to support that decision. The medical records do not directly indicate the need for such walking, and the claim rests primarily on the credibility of Plaintiff, which the ALJ was within his rights to reject. Plaintiff also argues that the sit/stand option was not set forth with sufficient precision in the RFC, but the court finds that the limitation was stated with adequate clarity.

Plaintiff also argues that the questions the ALJ asked the VE did not include the 30-minute interval limitation. The ALJ did ask the VE to consider whether the person "also required a sit/stand option." Tr. 192. The VE testified that this would reduce the number of available jobs by about 50%. (She also testified that the occasional need for a walking cane

would not preclude performing those jobs).  It appears that the ALJ suggested a need to sit or stand with *more* frequency than found in the RFC, but the VE nonetheless testified that the person could perform available jobs.  To the extent the 30-minute interval was not included in the hypothetical, there is no showing that any such error is not harmless.

Plaintiff's next argument concerns whether the jobs he was found able to perform are available in "significant" numbers within the meaning of the Act. The VE testified that "two examples" of the sedentary and unskilled work that Plaintiff could perform were final assembler and finisher.  The number of those jobs that would be available, after the 50% reduction because of the sit/stand option, would be approximately 52,000 jobs nationally, with 2,600 in Texas and 400 in Louisiana.  Tr. 191-192.  The ALJ accepted the VE's testimony and determined that the figures represented a significant number of jobs in the national economy, noting that the jobs identified were "merely representative of the types of jobs the claimant could perform and are not all-inclusive."  Tr. 25.

Work exists in the national economy when it exists in significant numbers in the region in which the claimant lives or in several other regions of the country, regardless of whether such work exists in the immediate area in which the claimant lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for such work. 20 C.F.R. §§ 404.1566(a) and 416.966(a).  There is no magic formula for determining when the number of available jobs reaches the level of significance, but courts have found that the availability of even a few hundred jobs in a small state such as Louisiana can be significant.

See cases collected in Lombard v. Barnhart, 2003 WL 22466178, n. 7 (D. Me. 2003) and Mercer v. Halter, 2001 WL 257842 (N.D. Tex. 2001). The court finds that the VE's testimony in this case provided the ALJ substantial evidence to support his finding that there are a significant number of jobs available. Accordingly, the decision of the Commissioner to deny benefits will be affirmed.

THUS DONE AND SIGNED at Shreveport, Louisiana, this 16th day of December, 2008.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE